UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHADWICK BELL                                     CIVIL ACTION
(SOCIAL SECURITY NO.: 439-93-XXXX)

VERSUS                                            NO. 18-1093-RLB[1]

COMMISSIONER OF SOCIAL SECURITY

---

### RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL

---

Chadwick Bell ("Plaintiff") seeks judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying

Plaintiff's application for Supplemental Security Income under the Social Security Act. (R. Doc.

1).  Having found all the procedural prerequisites met (Tr. 1-8), the Court has properly reviewed

Plaintiff's appeal.  *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's

decision, or the decision of the administrative law judge if the request for review is denied, is

binding unless you… file an action in Federal district court…").  For the reasons given below,

the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal

is **DISMISSED with prejudice**.

## I.      PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits (Tr. 140-149) alleging that

he became disabled on March 3, 2012 because of disabling conditions, namely diabetes, ADHD,

mild retardation, and asthma. (Tr. 161). Plaintiff's application was initially denied by an

Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 37-57) before

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 7), the case was
transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

issuing an unfavorable decision on December 20, 2017. (Tr. 9-26).  Plaintiff's request for review

of the ALJ's decision (Tr. 137-139) was denied by the Appeals Council on December 3, 2018.

(Tr. 1-8).  The ALJ's decision rested as the Commissioner's final decision when the Appeals

Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether

there is substantial evidence to support the findings of the Commissioner and whether the correct

legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401

(1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019,

1021 (5th Cir. 1990).  Substantial evidence has been defined as "'more than a mere scintilla. It

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*,

305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor

Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence

"must do more than create a suspicion of the existence of the fact to be established, but no

substantial evidence will be found only where there is a conspicuous absence of credible choices

or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

(quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to

resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the

evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even

if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.,*

*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is

less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th

Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).  First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c).  At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving he or she is incapable

of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. §

404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the

Commissioner to prove, considering the claimant's residual functional capacity, age, education

and past work experience, that he or she is capable of performing other work.  20 C.F.R §

404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform,

the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*,

925 F.2d at 789.

Here, the ALJ made the following determinations:

1.      Plaintiff was born on October 12, 1996, and had not attained the age of 22 as of

March 3, 2012, the alleged onset date.

2.      Plaintiff had not engaged in substantial gainful activity since March 3, 2012.

3.      Plaintiff had the following severe impairments: borderline intellectual

functioning, diabetes mellitus, and obesity.

4.      Plaintiff did not have an impairment or combination of impairments that meet or

medically equal the severity of one of the listed impairments.

5.      Plaintiff had the residual functional capacity to perform light work, except he can

understand, remember, and carry out simple instructions.

6.      Plaintiff had no past relevant work.

7.      Plaintiff was born on October 12, 1996, and was 15 years old, which is defined as

a younger individual age 18-49, on the alleged disability onset date.

8.      Plaintiff had a limited education and was able to communicate in English.

9.      Transferability of job skills was not an issue because Plaintiff did not have past relevant work.

10.     There were jobs that exist in significant numbers in the national economy that the Plaintiff can perform, considering Plaintiff's age, education, work experience, and residual functional capacity.

## IV.   DISCUSSION

Plaintiff advances the following three arguments in favor of reversal of the ALJ's decision: (1) substantial evidence did not support the ALJ's finding that Plaintiff did not meet the requirements of Listing 12.05B; (2) substantial evidence did not support the ALJ's finding that Plaintiff had the residual functional capacity to perform light work, except that he is able to understand, remember, and carry out only simple instructions; and (3) substantial evidence did not support the ALJ's rejection of the VE's opinion regarding the unavailability of jobs for persons missing in excess of two days per month.

### A.      Listing 12.05B

Plaintiff challenges the ALJ's finding at step three that his impairments do not meet or medically equal Listing 12.05B in Appendix 1. Listing 12.05B requires that each of three prongs be met. First, 12.05B1 requires a showing of "significantly subaverage general intellectual functioning" evidenced by IQ scores described as follows:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence.

20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00B1. In addition to the intellectual functioning component, an ALJ must also find the requirements of subsection B2 met, as follows:

5

> Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
> a. Understand, remember, or apply information (see 12.00E1); or
> b. Interact with others (see 12.00E2); or
> c. Concentrate, persist, or maintain pace (see 12.00E3); or
> d. Adapt or manage oneself (see 12.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App.1 § 12.00B2. Lastly, the evidence must "support the conclusion that the disorder began prior to [the claimant's] attainment of age 22." 20 C.F.R. § Pt. 404, Subpt. P, App.1 § 12.00B3. Here, the ALJ made no specific finding as to the first and third parts of Listing 12.05B, but concluded the requirements were not met because Plaintiff did not meet the 12.05B2 criteria, and Plaintiff advances argument limited to 12.05B2. Specifically, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information, no limitations interacting with others, no limitations with concentrating persisting, or maintaining pace, and no limitations with adapting or managing himself. (Tr. 17-18).

Plaintiff argues that the ALJ should have concluded that he had an extreme limitation in the ability to understand, remember, or apply information, and therefore, meets Listing 12.05B. In support of this contention, Plaintiff cites his FSIQ score of 68, along with evidence that he received special education services in school, was classified with a specific learning disability, was retained in 10th grade, was eligible for an alternative pathway to obtain a high school diploma, was not able to count, and had limitations in his ability to handle stress due to his intellectual capacity. (R. Doc. 11 at 7). The Commissioner responds that Plaintiff's low intellectual functioning does not directly correlate to a finding that Plaintiff had an extreme limitation in the ability to understand, remember, or apply information, and that the ALJ properly found only a moderate limitation. (R. Doc. 13 at 7-8).

6

Subsection 12.00E1 provides guidance for the interpretation of Subsection 12.05B2a, stating that section "refers to the abilities to learn, recall, and use information to perform work activities." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00E1. The Regulations provide examples of limitations in the ability to understand, remember, or apply information, such as "understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00E1. The ALJ found Plaintiff had only moderate limitations in this area, noting that Plaintiff "needed help managing funds because he could not count well," and that his general cognitive ability fell within the extremely low range of intellectual functioning, while also noting that Dr. Terrell "opined the claimant was able to tolerate the stress/pressure associated with daily work activity and demands as long as they did not exceed his cognitive/academic ability." (Tr. 17).

Beyond Plaintiff's IQ and Dr. Terrell's consultative examination, Plaintiff cites to his difficulties in school as evidence of his limitation in the ability to understand, remember, or apply information. (R. Doc. 11 at 7). Records from the Louisiana Department of Education reflect a qualification for specific learning disability based on reading comprehension and mathematics calculations. (Tr. 240). Notwithstanding his learning difficulties, the record suggests that Plaintiff "has missed a lot of days which has affected his ability to catch up with the rest of his classmates," and that he "is failing all classes due to his absences." (Tr. 240). In a September 14, 2017 letter from Ms. Martha Bell, Plaintiff's mother, she discusses Plaintiff's challenges in school, but also states that he "was to graduate in 2016 than[sic] 2017 from high

7

school but due to his diabetes he missed a lot of days." (Tr. 238). Dr. Terrell's report suggests the same, noting that Plaintiff "currently receives assistance with reading and attends all regular education classes, but that he "misses school often because of diabetes." In an amended individual evaluation dated March 24, 2015, the records note that the "[m]ajority of Chad's teachers stated that Chad is a brilliant student, despite the fact that he has an IEP, but he is absent to much." (Tr. 370). At an October 5, 2016 follow-up appointment with Melissa Hubbs, she notes that Plaintiff went to school for one day so far in the school year, and was sent home. (Tr. 623).

At the same time, there is evidence of some difficulty with regard to Plaintiff's ability to understand, remember, and apply information. Plaintiff's mother reports that spoken directions to Plaintiff have to be repeated two or three times, and he has to be shown. (Tr. 173). In a September 14, 2017 letter, Plaintiff's mother described difficulties during a particular trip to a deli, wherein Plaintiff was given instructions, went in alone, and came back out for the instructions to be repeated, still completing the task incorrectly. (Tr. 238).

The Regulations define extreme limitations as the inability "to function in this area independently, appropriately, effectively, and on a sustained basis," whereas moderate limitation is defined as a fair ability to function "in this area independently, appropriately, effectively, and on a sustained basis." Here, substantial evidence supports the ALJ's conclusion that Plaintiff had only moderate limitations in his ability to understand, remember, or apply information, and a finding of extreme limitation in this area would be unsupported. Plaintiff has shown—and the ALJ properly considered—evidence of some difficulties in this area. There is no question that he has struggled in school, and has received additional educational services to help him in both reading and math. (Tr. 392). Plaintiff has been found to have borderline intellectual functioning.

(Tr. 358). At the same time, Plaintiff's teachers report that he is a brilliant student, but simply misses too much school. Plaintiff reports being able to manage himself in all areas, with the exception of counting money. Thus, while Plaintiff has shown some difficulty with his ability to understand, remember, and apply information, substantial evidence supports the ALJ's finding that he has only moderate limitations.

Plaintiff also argues that the ALJ should have concluded that he had extreme limitations in the ability to concentrate based on his working memory index score of 69. (R. Doc. 11 at 8-9). In support of this contention, Plaintiff cites only to the consultative examination of Dr. Terrell, and specifically to Plaintiff's working memory index score of 69 along with the mental status examination. (R. Doc. 11 at 9; Tr. 355, 357).

The ALJ found that Plaintiff had no limitation in the ability to concentrate, as evidenced by his ability to recite the alphabet and spell one of two words forward and backward, state the days of the week backward, write a sentence given to him verbally, and circle just the letter "A" among a series of letters with one omission. (Tr. 18). Dr. Terrell concluded that Plaintiff's attention and concentration were adequate. (Tr. 355). Dr. Terrell also opined that Plaintiff "maintain attention to perform simple tasks for two hour blocks of time," and "sustain effort and persist at a normal pace over the court of a routine 40 hour work week." (Tr. 359).

Plaintiff's reliance on his working memory index and mental status alone is misplaced. The working memory index is a portion of the WAIS-IV test measuring Plaintiff's FSIQ. Where the 12.02B2 criteria addresses adaptive functioning, the IQ results are a diagnostic measure. *See, e.g., McCaskill v. Dept. of Health & Human Servs.*, 640 Fed. App'x 331, 334 (5th Cir. 2016) (citing *Randall v. Astrue*, 570 F.3d 651, 656-62 (5th Cir. 2009) ("Before proceeding any further in the disability eligibility analysis, Appellant must satisfy the diagnostic definition of

intellectual disability—he must demonstrate 'significantly subaverage general intellectual

functioning *with* deficits in adaptive functioning initially manifested before age 22.'").[2]

Despite a working memory index of 69, classified as "extremely low," Dr. Terrell

concluded that Plaintiff's attention and concentration were adequate, specifically noting that he

is able to maintain attention to perform simple tasks for two-hour blocks of time. (Tr. 359).

Plaintiff testified briefly that he does not leave the house alone because if someone asks him to

do something, they'd have to ask him more than one time to do it. (Tr. 47). Plaintiff's mother

reports some problems with Plaintiff's ability to follow through with a task, such as purchasing

specific items from a grocery store, but on the other hand, there are no objective medical records

that deal with complaints regarding Plaintiff's ability to concentrate, or treatment or therapy for

such deficits. Notwithstanding evidence in the record that Plaintiff has some limitations in this

area, evidence of significant limitations that would rise to the level of finding an inability to

function in this area is lacking, and substantial evidence supports the ALJ's moderate finding.

Even if a finding of marked limitation was required, that still would not have established

Listing 12.05. This is because, in order to satisfy Listing 12.05B without any extreme limitations

in any of 12.05B2 areas, an ALJ must find marked limitation in at least two of the four areas. 20

C.F.R. pt. 404, Subpt. P, App. 1, § 12.00F2. As the Court has previously concluded that

substantial evidence supports the ALJ's finding of moderate limitation in Plaintiff's ability to

understand, remember, and apply information, and Plaintiff does not argue the ALJ erred in

---

[2] The decision in *McCaskill* arises out of a prior version of Listing 12.05B, but the distinction between the diagnostic prong (12.05B1) and the functional limitation prong (12.05B2) is the same, and therefore, applicable herein. This finding is supported by the Regulations. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00A3 ("Listing 12.05 has two paragraphs, designated A and B, that apply to only intellectual disorder. Each paragraph requires that you have significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and evidence that demonstrates or supports (is consistent with) the conclusion that your disorder began prior to age 22.").

either of the other two areas, a finding of error by the ALJ in Plaintiff's ability to concentrate, persist, or maintain pace would be harmless.

### B.    ALJ's RFC Finding

The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work, except that he could understand, remember, and carry out only simple instructions. (Tr. 18). Plaintiff argues that substantial evidence does not support this finding because Plaintiff's extremely low IQ score significantly limits his ability to handle work-related stress, in particular "any stress located beyond his cognitive functional capacity." (R. Doc. 11 at 10-11). The Commissioner asserts that "Plaintiff has not shown functional limitations that preclude work." (R. Doc. 13 at 9).

The ALJ's decision reflects consideration of the consultative examination of Dr. Terrell, insofar as he noted Dr. Terrell's conclusion that Plaintiff maintained adequate concentration and attention. (Tr. 17). The ALJ also discussed Plaintiff's borderline intellectual functioning in the context of his RFC assessment, noting that his poor performance in school was likely attributable to diabetes-related absences as opposed to his intellectual abilities. (Tr. 20).

Plaintiff does not cite to any evidence not considered by the ALJ, but rather suggests that his low IQ scores should have eroded his RFC beyond what was assessed by the ALJ. It is not for the Court to reweigh the evidence, however. "On judicial review it is not the court's function to reweigh the evidence and make its own findings. As long as the ALJ applied the correct legal standards, considered all the evidence and his conclusions are supported by substantial evidence these findings must be upheld." *Devall v. Astrue*, 2010 WL 5624639, at *3 (M.D. La. Dec. 27, 2010), *report and recommendation adopted*, 2011 WL 204792 (M.D. La. Jan. 20, 2011).

Here, the ALJ considered Dr. Terrell's report, Plaintiff's records regarding his performance at school, as well as his and his mother's reports of his functional abilities. After so considering, the ALJ concluded that Plaintiff retained the ability to perform light work, except that he could understand, remember, and carry out only simple instructions. (Tr. 18). The ALJ accounted for Plaintiff's mental limitations in further restricting the RFC from the full range of light work to light work with the exception that Plaintiff could understand, remember, and carry out only simple instructions. Substantial evidence supports the ALJ's assessment.

Additionally, the ALJ found that Plaintiff had a severe impairment of borderline intellectual functioning. (Tr. 14). In so finding, the ALJ considered Plaintiff's IQ along with the school records available. (Tr. 15). The Court references these findings to note that, like the diagnostic *and* adaptive functioning requirements of a Listing, a low IQ score is more relevant to the existent of an impairment as opposed to a claimant's residual functional capacity, which assesses the functional limitations attributable to medically determinable impairments. "It is well-established that the mere diagnosis of an impairment, or a finding of a severe impairment, does not automatically establish the existence of functional limitations as a result of that impairment." *Simmons v. Colvin*, 2014 WL 6610016, at *5 (M.D. La. Nov. 20, 2014). That is to say, "[i]n addition to a diagnosis, there must be accompanying functional limitations that have an effect on a claimant's ability to do work activities. *See, e.g., Dise v. Comm'r of Soc. Sec.*, 2015 WL 566862, at *9 (W.D. La. Feb. 10, 2015) ("As noted by the Commissioner, plaintiff fails to demonstrate how a 'diagnosis' of scoliosis translates into a functional limitation."); *Sollien v. Colvin*, 2014 WL 1012515, at *6 (N.D. Tex. Mar. 14, 2014) ("[T]he diagnosis of a condition, by itself, is not evidence of a functional limitation."); *Brock v. Astrue*, 2011 WL 4348305, at *3

Case 3:18-cv-01093-RLB   Document 14   05/14/20   Page 13 of 15

(N.D. Tex. Sep. 16, 2011) ("Although plaintiff was diagnosed with osteoarthritis and complained of knee pain [], the diagnosis of a condition, by itself is not evidence of a functional limitation."

This distinction is significant because Plaintiff's reliance on his low IQ score in support of his argument that the ALJ erred in his RFC assessment is misplaced. The records available support the ALJ's RFC assessment, considering the functional limitations resulting from his borderline intellectual functioning. Beyond Plaintiff's IQ alone, Dr. Terrell opined that Plaintiff was "able to understand, remember, and carry out instructions for simple tasks, and that he would be able "to tolerate the stress/pressure associated with daily work activity and demands as long as they do not exceed his cognitive/academic ability." (Tr. 359). The ALJ relied on this finding, and incorporated same into his RFC, stating, "I find the residual functional capacity as set out above is consistent with the state agency mental limitations and more restrictive appropriate regarding his physical impairments in light of the objective medical evidence and giving maximum credit to the claimant." (Tr. 20).

Additionally, outside of the consultative examination and Plaintiff's school records, there is no objective medical evidence containing patient concerns regarding mental functioning, or treatment regarding mental functioning. The record contains Plaintiff's medical records from February 2013 (Tr. 302) through April 2017 (Tr. 656), which consists of treatment history for uncontrolled diabetes mellitus, along with obesity, hypertension, allergies, and acute illness. The record also reflects that Plaintiff earns money from cutting grass, which suggests not only a physical ability to do so, but also a mental ability to do at least some form of gainful work. (Tr. 356). He also indicated at the administrative hearing that he was returning to school, working on his high school diploma. (Tr. 41).

13

Based on Dr. Terrell's consultative examination, Plaintiff's school records, and his testimony at the administrative hearing, there is some evidence in the record of mental limitations. There is also evidence that Plaintiff is not so limited in his mental capacity as to preclude his ability to work in a manner consistent with the RFC. Accordingly, substantial evidence supports the ALJ's RFC assessment, eroding the light work occupational base to Plaintiff's ability to understand, remember, and carry out only simple instructions.

### C.      Consideration of VE's Testimony

The VE testified that there would be no work for a hypothetical person who could perform light work, further limited by the ability to understand, remember, and carry out only simple instructions, and would miss up to two (2) days of work per month. (Tr. 57). The ALJ did not rely on the VE's testimony insofar as that hypothetical is concerned, noting that he did not ultimately assess Plaintiff with those limitations. An ALJ need not rely on a VE's testimony for hypotheticals that included functional limitations the ALJ does not ultimately assess.

"It is well-established law, however that the ALJ need not rely on VE testimony that is based on evidentiary assumptions that the ALJ later concludes is unsupported by the objective medical evidence." *Brooks v. Astrue*, 2012 WL 3644743, at *7 (E.D. La. Aug. 9, 2012) (citing *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985)). Because the ALJ did not assess these limitations in his RFC assessment of Plaintiff, he committed no error in not relying on the corresponding testimony of the VE.

As the Court has previously concluded that substantial evidence supports the ALJ's RFC finding, and the law does not require an ALJ to rely on VE testimony for hypotheticals ultimately rejected, the Court finds no error in the ALJ's failure to rely on the VE's testimony

with regard to the availability of jobs for a hypothetical person who would miss up to two (2) days of work per month along with Plaintiff's RFC.

## V.     CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on May 14, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**